UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 2:14-cr-00380-APG-NJK |
| Plaintiff, | ) | |
| | ) | ORDER AND |
| vs. | ) | REPORT &  RECOMMENDATION |
| | ) | |
| MICHAEL RODNEY REIGER, | ) | (Docket No. 11) |
| Defendant. | ) | |

This matter was referred to the undersigned Magistrate Judge on Defendant's Motion to Suppress Evidence.  Docket No. 11.  The Court has considered Defendant's Motion and the United States' Response.  Docket Nos. 11, 14.  No reply was filed.  *See* Docket.

## I.    **BACKGROUND**[1]

On July 28, 2014, Las Vegas Metropolitan Police Department (LVMPD) Dispatch received a 911 call from John Pappas, who stated that someone broke into his house at 1224 Cashman Drive in Las Vegas, and that he was holding that person at gunpoint.  Docket No. 11-1, at 2.  Two LVMPD officers were dispatched to the residence and, upon arrival, the observed Pappas holding Defendant Michael Reiger at gunpoint in the driveway of the residence.  *Id.*  LVMPD Officer Howard took Defendant into custody, conducted a records check, and learned that Defendant is at least a four-time ex-felon.  *Id.*

Pappas told Officer Howard that he was driving past the residence, which belonged to his deceased mother when he observed a grey pickup truck with a trailer parked in front of the home.  *Id.*  Pappas said that he and his brother have been taking care of the residence since it has been

---

[1]Both parties relied upon the police report, search warrant and impound report for their recitation of facts.  *See* Docket No. 11, at 2; Docket No. 14, at 2.  The Court therefore derives its factual background from the same documents.

1    vacant and that the residence has been broken into a few times, including as recently as two weeks

2    prior. *Id*. Pappas went up to the residence to see who was there, noticed a window on the south side

3    of the residence was open, and saw Defendant inside. *Id*. When Pappas asked Defendant why he

4    was there, Defendant said he was doing work for the owner of the house. *Id*. Since Pappas knew

5    that Defendant's statement was untrue, he went to his house down the street, obtained his firearm,

6    and went back to his mother's house to confront Defendant. *Id*. Pappas drew his gun on Defendant

7    outside the residence, and made him lie on the ground while he called police from his cellular phone.

8    *Id*.

9          Officer Howard conducted a records check on the truck's plate, which returned as registered

10   to Defendant. Additionally, Defendant admitted that the vehicle belonged to him, and possessed the

11   keys for the vehicle. *Id*.; Docket No. 11-3, at 5. The trailer came back as unregistered and its plate

12   did not match any vehicle or trailer record; therefore, Officer Howard determined that it was a

13   fictitious plate. Docket No. 11-1, at 2. Based on all of the circumstances, including that Defendant

14   was inside the residence, gave a false statement about working for the owner of the residence, and

15   had an open trailer with fictitious plates for hauling attached to his truck, Officer Howard determined

16   that a reasonable person would believe that Defendant's intent was to illegally take items from the

17   residence, and placed him under arrest for Burglary. *Id*.

18         Since the vehicle was illegally parked in front of the residence, its owner was being arrested

19   and its trailer had fictitious plates, Officer Howard decided to tow it. *Id*. Prior to towing the vehicle,

20   Officer Howard conducted an inventory of the vehicle. *Id*. During this inventory he located a black

21   backpack, which contained a black stun gun and a silver magazine with .45 caliber rounds. *Id*.

22   Officer Howard also found a silver semi-automatic handgun under the driver's armrest. *Id*. Officer

23   Howard then stopped his inventory and notified LVMPD's Firearms Investigative Section. *Id*.

24         Detectives Fink and Rinetti, from the Firearms Investigative Section, responded to the

25   residence as a result of Officer Howard's notification. *Id*. Upon arrival, they spoke with Officer

26   Howard, who provided them with the details of what had occurred. *Id*. Officer Fink decided to

27   obtain a search warrant to recover the handgun, stun gun and magazine, as well as a buccal swab

28   from Defendant. *Id*., at 2-3. A judge telephonically approved his request for a search warrant, and

1    Detective Fink then searched Defendant's vehicle.  *Id*., at 3.  *See also* Docket No. 11-3.

2         Detective Fink recovered the handgun from the front seat of Defendant's vehicle, along with

3    the stun gun, magazine and a buccal swab sample from Defendant.  Docket No. 11-1, at 3.  He noted

4    that the handgun was a Springfield Armory .45 caliber semi-automatic handgun with rounds in it

5    magazine, and that the magazine in the handgun matched the magazine in the black backpack.  *Id*.

6     Defendant was then transported to the Clark County Detention Center and booked on charges of

7    Burglary and Own or Possess a Firearm by a Prohibited Person-Ex-Felon.  *Id*.

8         On December 2, 2014, a federal grand jury issued an indictment charging Defendant with one

9    count of Felon in Possession of a Firearm, in violation of Title 18, United States Code, Sections

10   922(g)(1) and 924(a)(2).  On April 3, 2015, Defendant filed the instant motion to suppress evidence,

11   asking the Court to suppress the evidence found in his truck during the inventory search, and seized

12   as a result of the search warrant.  Docket No. 11.  Defendant also requests an evidentiary hearing.

13   *Id*., at 1.

14   **II.    ANALYSIS**

15        **A.    Evidentiary Hearing**

16        The United States Court of Appeals for the Ninth Circuit has held that an evidentiary hearing

17   on a motion to suppress need only be held if the moving papers allege facts with sufficient

18   definiteness, clarity, and specificity to enable the court to conclude that contested issues of material

19   fact exist.  *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000) (*citing United States v.*

20   *Walczak*, 783 F.2d 852, 857 (9th Cir. 1986); *United States v. Harris*, 914 F.2d 927, 933 (7th Cir.

21   1990); *United States v. Irwin*, 613 F.2d 1182, 1187 (9th Cir. 1980); *United States v. Carrion*, 463

22   F.2d 704, 706 (9th Cir. 1972) ("Evidentiary hearings need be held only when the moving papers

23   allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude

24   that relief must be granted if the facts alleged are proved.")).

25        "A hearing will not be held on a defendant's pre-trial motion to suppress merely because a

26   defendant wants one.  Rather, the defendant must demonstrate that a 'significant disputed factual

27   issue' exists such that a hearing is required."  *Howell*, 231 F.3d at 621 (*citing Harris*, 914 F.2d at

28   933).  The determination of whether an evidentiary hearing is appropriate rests in the reasoned

discretion of the district court. *United States v. Santora*, 600 F.2d 1317, 1320 (9th Cir.), *amended by* 609 F.2d 433 (1979). Here, both parties relied upon the same reports generated by LVMPD in presenting the facts. The court concludes there are no contested issues of fact that require an evidentiary hearing in this matter, and the court will therefore decide the motion on the moving and responsive papers.

### B. Motion to Suppress

Defendant submits that the government is generally permitted to conduct an inventory of items in vehicles when the vehicle is under its lawful custody and control, and that LVMPD protocols allow for inventory searches. Docket No. 11, at 4, 6. He contends that the United States may not claim that Officer Howard searched the vehicle incident to arrest, since Defendant was not within reaching distance of the backpack or front seat of the vehicle at the time of his arrest, and since there was no reason to believe any items Defendant may have stolen were located in his truck. *Id.*, at 5. Defendant further claims that Officer Howard completed the impound report and called for the tow truck after Detective Fink arrived and obtained a search warrant and, therefore, he concludes that "[n]o inventory was done when Officer Howard allegedly conducted his purported inventory." *Id*. Finally, Defendant alleges that, if Officer Howard had performed his inventory search lawfully, a search warrant would not have been needed. *Id.*, at 6.

In response, the United States points out that Defendant has conceded that inventory searches are proper. Docket No. 14, at 3. The United States agrees that the search completed by Officer Howard was not a search incident to arrest, and reiterates that Officer Howard conducted an inventory search of Defendant's vehicle. *Id.*, at 3-4. The United States submits that Defendant's bare assertion that the inventory search was completed after the search warrant was obtained does not mean that that was the order in which the events occurred; however, even if they did occur in that order, no constitutional violation occurred. *Id.*, at 3. Nonetheless, the search warrant affidavit, which describes the backback, handgun, stun gun and magazine found during the inventory search indicates that the inventory search occurred first. Id., at 4. The United States submits that Defendant has not credibly challenged the legitimacy of either the inventory search or the search warrant. *Id.*, at 3. Finally, the United States points out that the fact that Detective Fink opted to obtain a search

- 4 -

1  warrant to search Defendant's vehicle after Officer Howard's inventory search does not render the

2  inventory search improper.  *Id.*, at 4.

3       "Inventory searches have been held constitutional if they are conducted in accordance with

4  the standard procedures of the agency conducting the search or come under another exception to the

5  Fourth Amendment warrant requirement."  *United States v. Ramos-Oseguera*, 120 F.3d 1028, 1036

6  (9th Cir. 1997).  Once a vehicle has been legally impounded, the police may conduct an inventory

7  search, as long as it conforms to the standard procedures of the local police department.  *South*

8  *Dakota v. Opperman,* 428 U.S. 364, 375–76 (1976); *see also United States v. Wanless,* 882 F.2d

9  1459, 1463 (9th Cir.1989).  Inventory procedures protect an owner's property while it is in the

10  custody of the police, insure against claims of lost, stolen, or vandalized property, and guard the

11  police from danger.  *Colorado v. Bertine*, 479 U.S. 367, 372 (1987).

12       Defendant does not dispute that his vehicle was legally impounded.  *See* Docket No. 11.

13  Additionally, Defendant concedes that the inventory search was completed according to LVMPD

14  protocols.  *Id.*, at 6.  Although Defendant contends that the inventory search was conducted after the

15  execution of the search warrant, the Court finds that the information regarding the inventory search

16  in Detective Fink's application for the search warrant clearly demonstrates that the inventory search

17  was conducted prior to the execution of the search warrant.  *See* Docket No. 11-3, at 2, 5.[2]  The Court

18  therefore finds that LVMPD obtained the evidence at issue during a lawful inventory search, and that

19  no Fourth Amendment violation occurred.

20                                        **ORDER**

21       Based on the foregoing and good cause appearing therefore,

22       IT IS HEREBY ORDERED that Defendant's request for an evidentiary hearing is **DENIED**.

23                                **RECOMMENDATION**

24       Based on the foregoing and good cause appearing therefore,

25       IT IS RECOMMENDED that Defendant's Motion to Suppress Evidence (Docket No. 11)

26  be **DENIED**.

27  ─────────────

28       [2]In any event, Defendant presents no authority that supports his proposition that the inventory
search would have violated his rights even if the search warrant had been executed first.

1

**NOTICE**

2       Pursuant to Local Rule IB 3-2 **any objection to this Report and Recommendation must**

3  **be in writing and filed with the Clerk of the Court within 14 days of service of this document.**

4  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived

5  due to the failure to file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142

6  (1985).  This Circuit has also held that (1) failure to file objections within the specified time and (2)

7  failure to properly address and brief the objectionable issues waives the right to appeal the District

8  Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst*, 951

9  F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir.

10  1983).

11       DATED this 14th day of May, 2015.

12

13

14       _____

15       NANCY J. KOPPE
         United States Magistrate Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

- 6 -